IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRYSTAL DAWN WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-444-GLJ |
| ) | |
| FRANK BISIGNANO,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Claimant Crystal Dawn Welch requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Martin O'Malley as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

### Claimant's Background

Claimant was forty-two years old at the time of the administrative hearing. (Tr. 51). She completed high school and has worked as a general clerk, automobile accessories salesperson, and waitress. (Tr. 32, 256). Claimant alleges that she has been unable to work since her application date of September 1, 2020, due to being legally blind, chronic atherosclerosis of coronary artery, benign essential hypertension, bipolar affective disorder, combined systolic and diastolic heart failure, chronic hepatitis C without hepatic coma, ischemic heart disease due to coronary artery obstruction, ischemic cardiomyopathy, and meralgia paresthesia of the right side. (Tr. 255).

### Procedural History

On August 24, 2022, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Claudia Travis conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated March 7, 2024. (Tr. 10-35). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  At step two, she found Claimant had the severe impairments of coronary artery disease, status post myocardial infarction and stenting/catheterization procedures, chronic heart failure, morbid obesity, diabetes mellitus, hypertension, and hepatitis C, as well as the nonsevere impairments of headaches, paresthesia of the right side, sleep apnea, and bipolar disorder. (Tr. 13-16).  She then determined Claimant did not meet a Listing at step three.  At step four, she found that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i.e.*, she could lift/carry/push/pull up to ten pounds occasionally and smaller items more frequently, sit up to six hours in an eight-hour workday, and stand/walk a combined total of two hours. Additionally, the ALJ found Claimant could reach frequently but not constantly with the upper arms, tolerate occasional exposure to pulmonary irritants such as dust, fumes, odors, and gases, and occasionally climb, stoop, kneel, crouch, crawl, climb, or balance, but that she could never climb ladders/ropes/scaffolds.  (Tr. 20).  The ALJ then found that while Claimant could not return to her past relevant work, she was nevertheless not disabled because there were jobs she could perform in the national economy, *e.g.*, surveillance system monitor, document preparer, and addresser.  (Tr. 32-35).

## Review

Claimant alleged the ALJ failed to properly assess her RFC in a multitude of ways that do not follow a linear path of organization.  She contends the ALJ failed in assessing her physical RFC by failing to account for her headaches, the need to elevate her legs, and

fatigue, and further failed to properly assess her activities of daily living, failures to follow up with certain treatment, and a lack of evidence to support the assigned RFC. Related to this argument, Claimant contends the ALJ failed to properly assess the state reviewing physician opinions, the only RFC opinion evidence in the record as to her physical impairments. As to Claimant's mental impairments, she contends the ALJ failed to properly incorporate the opinions of the state reviewing physicians that provided proposed mental RFC assessments. The Court agrees with Claimant's contention as it relates to ALJ's assessment of the state reviewing physicians with regard to her physical impairments, and the decision of the Commissioner must therefore be reversed.

The relevant medical records as to Claimant's physical impairments reflect Claimant's weight placed her in the obese range during the relevant time period. (Tr. 848, 938, 1065, 1077, 1317, 1510, 1767, 1955). In general, Claimant began complaining of chest pain in 2021 and had multiple related hospitalizations through 2022, although she appeared to have an acute ischemic event in June 2019 as well. (Tr. 462). Ultimately, she had multiple coronary artery stents put in beginning in October 2021, as well as undergoing a quadruple bypass in June 2022. (Tr. 427, 454, 469, 473-474, 483, 628-629). Following the procedure, Claimant continued to complain of leg swelling that same month. (Tr. 891). She was hospitalized again in July 2022, and underwent cardiac catheterization at that time for management of her ongoing coronary artery disease. (Tr. 928). By December 2022, her ongoing diagnoses consisted of type II diabetes mellitus, chronic hepatitis C without hepatic coma, chronic combined systolic and diastolic heart failure, coronary artery disease involving native coronary artery of native heart without angina pectoris, severe obesity,

and tobacco dependence. (Tr. 1160-1161). Her weight at that time was 290 pounds at five feet tall. (Tr. 1168).

Claimant still had lower extremity swelling in March 2023, but could not participate in cardiac rehab due to her home's distance from the hospital. (Tr. 1219). The records reflect multiple medication management notes where doctors juggled Claimant's ability to afford or obtain the medications prescribed for management of her impairments. (Tr., *e.g.*, 1219, 1229, 1270). She spent a night in the hospital that month for hypoglycemia as well. (Tr. 1246, 1270). A treatment note from October 2023 reflects Claimant with diagnoses of coronary artery disease involving coronary bypass graft of native heart without angina pectoris, heart failure with reduced ejection fraction, ischemic cardiomyopathy, and benign essential hypertension. (Tr. 1310).

As to her mental impairments, Claimant was diagnosed with bipolar disorder and given a referral to psychiatry on March 30, 2022. (Tr. 1012). She had a depressed mood and flat affect at multiple times in the record. (Tr., *e.g.*, 85, 1014).

State reviewing physicians determined initially and on reconsideration that Claimant could perform the full range of light work, with no additional postural, manipulative, environmental, or other limitations. (Tr. 94-95, 103-105). As to her mental impairments, state reviewing physicians determined initially and on reconsideration that evidence supported the presence of an affective disorder, but that she had only mild limitations in the four areas of functioning and therefore any mental impairment was nonsevere. (Tr. 84-86, 101-102).

At the administrative hearing, Claimant testified that she weighed 250 pounds at the hearing, having recently lost fifty pounds more recently due to weight loss medication. (Tr. 60). She testified that she had to stop working due to swelling in her legs, and that as of the January 2024 hearing, her sister had to help her with washing her hair because she cannot keep her hands above her head for more than a few seconds, and that family cleaned her house for her and prepared meals for her to heat up. (Tr. 61, 68-69). She further testified that she does not drive and does not usually go to the store for herself, but does not use an assistive device to walk. (Tr. 62). Upon further questioning, she acknowledged that, even post quadruple bypass surgery and multiple cardiac catheterizations, she still gets out of breath on a regular basis, and still struggles with fluid retention and swelling in her lower extremities. (Tr. 62). She testified that she elevates her legs three or four times per day, from twenty to forty-five minutes at a time. (Tr. 64). As to functional limitations, she stated she can stand from seven to ten minutes at a time, and then needs to sit at least five to ten minutes, and she can only walk up to thirty feet at most, at which time she is out of breath. (Tr. 65). Additionally, she testified she has a hernia that cannot be repaired due to her heart's condition. As to her diabetes, she stated that it continues to be difficult to get under control, although it is lower following the use of the weight loss medication. (Tr. 66-67).

In her written opinion, the ALJ summarized the claimant's hearing testimony and the related Function Reports, and provided a chronological summary of the medical evidence in the record. As relevant here, the ALJ noted that the majority of the records pertained to Claimant's coronary artery disease, status post myocardial infarction and

stenting/catheterization procedures, and chronic heart failure, along with her obesity, diabetes, hypertension, and hepatitis C. (Tr. 22). Following the chronological summary, the ALJ found that Claimant was "relatively stable from a cardiac standpoint" despite ongoing fatigue and dyspnea which she used to limit Claimant to sedentary work. However, the ALJ found that the "evidence as a whole" did not suggest she was unable to perform sedentary work, noting Claimant had been advised to exercise to treat her conditions. The ALJ found that while Claimant testified to significant walking, standing, and sitting limitations, her self-prepared function reports were not significant in those limitations. (Tr. 29). Further, the ALJ found that to the extent Claimant would need to elevate her legs, she could do that within standard work breaks or during off hours, and that the sedentary work limitation further accommodated that. (Tr. 29). The ALJ further noted that Claimant's reported reaching limitations were not reflected in notes from examining clinicians. (Tr. 30). The ALJ further noted that she considered Claimant's headaches, but that they appeared to be responsive to medications, and that the headaches, fatigue, and bipolar disorder had all been considered in combination but that there did not appear to be significant mental health limitations. (Tr. 30). The ALJ found the physical RFC assessments from the state reviewing physicians unpersuasive, noting they were not consistent with the evidence in the file related to her severe impairments and that she had therefore limited Claimant to sedentary exertion levels. The ALJ did not explain the need for the additional postural limitations or how the additional ones in the RFC fully accounted for Claimant's impairments. (Tr. 30-31). The ALJ then found the mental RFC assessments from the state reviewing physicians to be persuasive, supported by their review of the

evidence, and consistent with the record showing limited treatment for mental health symptoms. (Tr. 31). The ALJ ultimately concluded that the claimant was not disabled. (Tr. 31-35).

Claimant argues that the ALJ failed to properly assess the medical opinions in the record, including both state reviewing physician opinions. The state reviewing physicians found Claimant had the severe impairment of chronic ischemic heart disease with or without angina and diabetes mellitus (Tr. 85, 101), then assigned the full range of light work. In contrast, the ALJ found at step two that Claimant had the severe impairments of coronary artery disease, status post myocardial infarction and stenting/catheterization procedures, chronic heart failure, morbid obesity, diabetes mellitus, hypertension, and hepatitis C. (Tr. 13). The record contains no comprehensive in-person physical examination of Claimant in terms applicable to an RFC.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but

not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ in this case stated that the physical RFC assessments were unpersuasive and inconsistent with the evidence in the file, given she was treated for chronic heart failure, coronary artery disease, type II diabetes, hepatitis C, and obesity. (Tr. 31). However, the ALJ wholly failed to assess these opinions for supportability. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[T]he ALJ must explain how both factors were considered."); *see also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not

discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Though perhaps the findings that the opinions were unpersuasive and inconsistent makes clear the ALJ also found them unsupported, an error remains. The ALJ made no clear explanation for the differences between her RFC assessment and the RFC suggested by the physicians. The Court acknowledges that the ALJ's assigned RFC is *more* restrictive than that assigned by the state reviewing physicians. However, the ALJ nevertheless fails to connect the assigned RFC limitations to the specific evidence in the record instead referring to the evidence as a whole. Specifically, the ALJ did not explain how the prescribed additional postural limitations of occasional climbing, stooping, kneeling, crouching, and crawling, accounted for her limitations, nor how the limitation to occasional exposure to pulmonary irritants would accommodate her shortness of breath that is a documented impairment related to her chronic heart disease rather than environmental causes. Thus, despite including include postural and environmental limitations related to Claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such limitations account for *each* of this Claimant's severe impairments, *i.e.*, coronary artery disease, status post myocardial infarction and stenting/catheterization procedures, chronic heart failure, morbid obesity,

diabetes mellitus, hypertension, and hepatitis C, much less her numerous additional nonsevere impairments and all of the impairments in combination. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). It thus remains unclear, for only one example, how the claimant could perform the standing/walking requirements of sedentary work given the evidence in the record suggestive of dyspnea while ambulating.

"[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *2; *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted]; *see also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the Claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinably impairments, both those he deemed 'severe' and those 'not severe.'") (emphasis in original) (internal citations omitted). The ALJ's opinion reflects a failure to assess the combined effect of Claimant's numerous

impairments, both severe and nonsevere, for her RFC despite the requirement that and "ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).

Moreover, by failing to adopt completely the state reviewing medical opinions, the ALJ was left without a medical opinion to rely on in forming her physical RFC determination. "Although a medical opinion is not required for the RFC determination, '[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.'" *J.Z. v. Kijakazi*, 2022 WL 859765, at *6 (D. Kan. Mar. 23, 2022) (quoting *Pedraza v. Berryhill*, 2018 WL 6436093, at *4 (D. Kan. Dec. 7, 2018)); *Wells*, 727 F.3d at 1071-1072. There is no indication that counsel requested further medical examinations, and the need was perhaps not clearly established in the record. *Jazvin v. Colvin*, 659 Fed. Appx. 487, 489 (10th Cir. 2016) ("[I]f the Claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'"). Nonetheless, on remand, the Court encourages the ALJ to consider ordering a consultative examination to properly account for both Claimant's physical *and* mental impairments, as such evaluation could be particularly helpful as to, *inter alia*, Claimant's sit/stand/walk limitations, her dyspnea and edema, her fatigue, and whether the admonition to exercise for approximately thirty minutes translates to a sufficient RFC to work. *See* 20 C.F.R. §§ 404.1512(e)(1),

416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Furthermore, on remand the ALJ should take care to apply the *Frey*[3] factors before discounting Claimant's symptom allegations based on a failure to pursue treatment or take medication. *Allred v. Comm'r, SSA*, 2023 WL 3035196, at *4 (10th Cir. Apr. 21, 2023), ("[T]he ALJ should have considered the *Frey* factors before discounting Ms. Allred's claim of disabling symptoms based on her periods of treatment noncompliance."). The *Frey* factors for "reviewing the impact of a claimant's failure to undertake treatment" are "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." 816 F.3d at 517. In *Allred*, the Tenth Circuit instructed courts to follow *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), which held "that an ALJ must consider the *Frey* factors before discounting the credibility of a claimant's symptom allegations based on a failure to pursue treatment or take medication." *Allred*, 2023 WL 3035196, at *3 (citing *Thompson*, 987 F.2d at 1490). *See, e.g.*, Tr. 24-25, 628-629, 1360 (seemingly faulting Claimant for leaving a hospital against medical advice where the record demonstrates Claimant left one hospital and went directly to a different hospital because she believed she contracted an infection at the first hospital).

---

[3] *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

As to Claimant's mental impairments, there is not a medical opinion in the record that contradicts the ALJ's mental RFC determination. As such, it was not error for the ALJ to form an RFC based on the medical evidence of record without a medical source opinion. *Troutman v. Kijakazi*, CIV-21-920-SM, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022). (finding the ALJ did not "play doctor" when the ALJ proffered an adequate explanation for rejecting the [medical opinion] and determined Plaintiff's RFC based on the evidence of record[.]" On remand, however, the ALJ should assess Claimant's mental impairments in combination with the other severe and nonsevere impairments.

The ALJ should likewise carefully evaluate Claimant's pain, and the consistency of her statements with the evidence (including any additional evidence provided by a consultative examiner). As part of the symptom analysis, required under Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017), the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8.

Accordingly, the decision of the ALJ is hereby reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments, as well as a thorough evaluation of Claimant's pain in relation to these impairments. If such

analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 15th day of January, 2026.

_____
**GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE**